**VIRGINIA SUNSHINE ALLIANCE et al.**

v.

**NUCLEAR REGULATORY COMMISSION.**

**Civ. A. No. 80–2099.**

United States District Court,
District of Columbia.

Feb. 26, 1981.

Katherine A. Meyer, Washington, D. C., for plaintiffs.

Valerie K. Schurman, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This action arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq.* Plaintiffs seek access to records of the Nuclear Regulatory Commission concerning the safety precautions taken in the transportation of irradiated nuclear reactor fuel ("spent fuel") within the continental United States. Specifically, two types of information are in dispute: summary descriptions of the capabilities of local law enforcement authorities to respond to emergency calls ("LLEA response capabilities") and segments of the route where mobile telephone coverage between the carrier and receiving station is either erratic or non-existent ("communication vulnerability data").[1]

Defendant withholds the documents pursuant to exemptions 3 and 4, 5 U.S.C. § 552(b)(3) & (4). The Court finds that the documents are properly withheld on the basis of exemption 3.

The basic policy of FOIA is to promote disclosure. In 5 U.S.C. § 552(b), however, Congress carefully delineated nine exemptions from the otherwise mandatory disclosure requirements. *EPA v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). Under exemption 3, an agency may with-

---

1. Originally information regarding the specific safe havens along the route to which the carrier is directed to go in the event of an emergen-
cy was sought. Plaintiffs are no longer seeking access to this information.

hold information "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3).

■ Section 147 of the Atomic Energy Act, which was enacted on June 30, 1980, is the applicable (b)(3) statute in this case. Although this section was enacted after the plaintiffs' original FOIA requests, it is well established "that a court is to apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." *Bradley v. School Board of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1367 (D.C. Cir. 1977). Thus, the criteria set out in section 147 of the Atomic Energy Act govern disclosure of the documents at issue here.

■ In order for information to be withheld under section 147, it must be determined (a) that the information is "safeguards information;" i. e., that it "specifically identifies a licensee's or applicant's detailed . . . security measures (including security plans, procedures, and equipment) for the physical protection of special nuclear material . . . [or] byproduct material . . . in quantities determined by the Commission to be significant to the public health and safety or the common defense and security," and (b) that the unauthorized disclosure of the information could have the requisite effect; i. e., that its disclosure "could reasonably be expected to have a significant adverse effect on the health and safety of the public or the common defense and security by significantly increasing the likelihood of theft, diversion, or sabotage of such material . . . ." Section 147(a)(1), (2) and (3)(B).

Spent fuel is highly radioactive and is shipped in very strong massive containers for safe handling in transit and for protection against risks associated with possible transportation accidents. It is shipped only on NRC approved routes with approved safety precautions taken. There were approximately 170 such shipments in the United States during 1980 either for the purpose of storage or reprocessing.

An NRC-sponsored study suggested that sabotage of spent fuel shipments in areas of high population density held the potential for producing serious radiological consequences. The Commission therefore published certain interim safeguards measures for protecting spent fuel shipments as a matter of prudence, until the results of confirmatory research are available (now expected in late 1981). The safeguards, as revised in June 1980, call for the licensee to notify NRC in advance of each shipment, maintain adequately trained and instructed escorts during transit, make arrangements for the response of local law enforcement authorities along the route in case of an emergency or a call for assistance, maintain communications with local authorities and with the designated communications center and provide immobilization capabilities for the transporting vehicle. 10 C.F.R. 73.37, *reproduced in* 45 *Fed.Reg.* 37399, 37408–10.

Against this background, it is clear that the LLEA response capabilities data and the communication vulnerability data constitute safeguards information described in section 147. Each of the documents withheld is taken from a spent fuel route survey for a particular highway route over which spent fuel is shipped. The withheld information concerning LLEA response capabilities apprises the licensee, the carrier and the NRC of what LLEA response can be expected in the event of an emergency. The communication vulnerability data describes important aspects of the licensee's radiotelephone capability. This information describes discrete elements of the security protection system required of each NRC licensee for each shipment of spent fuel over each route approved by NRC. It is safeguards information.

It is equally apparent to the Court that the public disclosure of the withheld information "could reasonably be expected to have a significant adverse effect on the health and safety of the public or the common defense and security by significantly increasing the likelihood of theft, diversion, or sabotage of such material . . ." Section

147(a)(3)(B). Knowledge of LLEA capabilities and mobile telephone shortcomings could be of considerable value to a potential sabotage attempt by revealing specific vulnerabilities in the routes travelled. The obvious usefulness to a hijacker or a saboteur clearly creates "some probability that [its] disclosure would have a significant adverse effect." H.Conf.Rep.No.1070, 96th Cong., 2d Sess. 35, *reprinted in* [1980] U.S. Code Cong. & Ad.News 4042, 4086, 4104–05.

The Court also has examined the Vaughn index and determined that no portions of the documents withheld are reasonably segregable. Further, the withholdings meet the "minimum restrictions" requirement of Section 147.

Finally, plaintiffs allege that questions of fact exist which require further discovery. Discovery was cut off by Court order on February 5, 1981 pending the outcome of this motion. Plaintiffs have outstanding interrogatories and a document production request which seeks more specifics concerning how and for what purpose the LLEA capabilities information and the mobile telephone vulnerability data were compiled and who already has access to the information, and what the precise basis is for the NRC's claim that disclosure could reasonably be expected to have the requisite adverse effect.

This discovery is not necessary. No dispute as to the material facts exists. The parties agree on the basic nature of the information in dispute. They contest only the legal conclusions to be drawn from the facts. Plaintiffs' four critical factual issues (see plaintiffs' Opposition at 14–15) are actually legal issues. The case is appropriate for summary judgment.

In accordance with the above, the Court finds that defendant's exemption 3 claim is valid, withholds all of the documents in dispute, and dismisses the case.